# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

### PORTLAND DIVISION

**JAMES GIBSON** and **LAURIE GIBSON**,
husband and wife,

        Plaintiffs,

    v.

**OWYHEE PRODUCE, LLC**, an Oregon
limited liability corporation,

        Defendant.

Case No.: 3:11-cv-01132-SI

**OPINION AND ORDER**

Gary J. Susak, Susak & Powell, P.C., Suite 1120, KOIN Center, 222 SW Columbia St., Portland, Oregon 97201. Of Attorneys for Plaintiffs.

Stephen C. Voorhees and Kurt C. Peterson, Kilmer, Voorhees & Laurick, P.C., 732 NW 19th Ave., Portland, Oregon 97209-1302. Of Attorneys for Defendant.

**SIMON, District Judge**.

        Plaintiff James Gibson ("Mr. Gibson") was a flatbed truck driver. In March 2010, Defendant Owyhee Produce, LLC ("Owyhee") hired Meteor Express, Inc., Mr. Gibson's employer, to haul a truckload of onions from Owyhee's packing and shipping facility in Oregon to a client in Florida. Meteor dispatched Mr. Gibson to haul the load. Before authorizing Mr. Gibson to depart, Owyhee required that Mr. Gibson cover the load of onions with a tarp. While applying a tarp, Mr. Gibson fell and was seriously injured. Mr. Gibson and his wife, Laurie Gibson, (collectively "Plaintiffs") bring this action to recover damages incurred as a result of Mr. Gibson's fall. Before the court is Owyhee's motion for summary judgment. (Dkt. 19.) For the reasons discussed below, the court grants in part and denies in part Owyhee's motion.

## BACKGROUND

Mr. Gibson was a truck driver employed by Meteor Express, Inc.[1] Amended Complaint ("Compl.") at ¶ 2 (Dkt. 8). Owyhee is in the business of packing and shipping produce, including onions. Declaration of Robin Froerer Myers ("Froerer Decl.") at ¶ 1 (Dkt. 21); Deposition of Robin Froerer ("Froerer Dep.") at 14 (Dkt. 23-2). On March 9, 2010, Meteor dispatched Mr. Gibson, who was driving a flatbed truck, to haul a load of onions from Owyhee's facility in Nyssa, Oregon to Miami, Florida. Deposition of James Gibson ("Gibson Dep.") at 68-71 (Dkt. 23-1); Contract of Haul (Dkt. 23-2). After Mr. Gibson arrived at Owyhee's facility, Owyhee's employee Socimo Cruz loaded approximately 950 bags of onions, stacked onto 19 pallets (with 50 bags to a pallet and each pallet separately wrapped in plastic) onto Mr. Gibson's truck. Deposition of Socimo Solano Cruz ("Cruz Dep.") at 5 (Dkt. 23-4); Froerer Decl. at ¶¶ 2-3; Gibson Dep. at 74. Mr. Gibson did not assist Mr. Cruz load the onions. Gibson Dep. at 78.

When Mr. Gibson was dispatched to haul the load of onions, he expected that he would have to cover the load with a tarp. Gibson Dep. at 69-70. Mr. Gibson brought his own tarp. *Id.* at 83. The Contract of Haul provided that the driver should cover the load "completely w/tarps, [and] uncover front & rear in nice weather[.]" Contract of Haul (Dkt. 23-2) (capitalization omitted). Owyhee's dispatcher gave Mr. Gibson the same instructions: Cover the load of onions from "top to bottom" with a tarp and open the front and the back when Mr. Gibson reached "fair weather." Gibson Dep. at 81-82. Mr. Cruz used the forklift to load Mr. Gibson's tarp onto the top

---

[1]  The Amended Complaint states that Mr. Gibson is employed by Fleet Force, Inc. Amended Complaint at ¶ 2. Owyhee states, however, that Mr. Gibson testified in his deposition that he "was actually employed by Meteor Express, Inc." Def.'s Memorandum in Support at 2 n.2 (Dkt. 20).

of the load.[2] Cruz Dep. at 6; Gibson Dep. at 83; Deposition of Brenda Hittle ("Hittle Dep.") at 26 (Dkt. 23-3). Mr. Gibson asked one of Owyhee's employees, Maria Payan, if "there was any way that we [Owyhee] can help him" apply the tarp.[3] Deposition of Maria Payan ("Payan Dep.") at 16 (Dkt. 23-5). Owyhee does not permit its employees to help truck drivers apply tarps. *Id.*; Froerer Decl. at ¶5. After Mr. Cruz loaded the truck and placed the tarp on top of the load, Mr. Gibson pulled away from the loading dock and parked alongside one of Owyhee's buildings to apply the tarp. Gibson Dep. at 82-83; Hittle Dep. at 28-29.

Owyhee "inspects the tarping of the load to make sure it [is] correct before" permitting the driver to leave the premises. Hittle Dep. at 19-20; Gibson Dep. at 85. Other than instructing Mr. Gibson to apply the tarp from top to bottom and to open the front and back in good weather, Owyhee's employees did not give Mr. Gibson any instructions on how to apply the tarp over the load. Gibson Dep. at 84-85. As Mr. Gibson was pulling the tarp over the load of onions, the onions on which he was standing shifted below him. Gibson Dep. at 88. Mr. Gibson lost his balance and fell off the back of the truck, fracturing his hip and elbow and straining his neck and back. *Id.*; Compl. at ¶ 6.

## STANDARDS

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

---

[2] In their response brief, Plaintiffs states that "[Mr.] Cruz . . . and Maria Payan, the person in charge of [Owyhee's] inventory, both testified in their depositions that [Owyhee] assisted in the tarping by having Socimo Cruz use Owyhee Produce's forklift to lift the tarps to the top of the load." Pls.' Resp. at 11. In his deposition Mr. Gibson testified that he put the tarp on top of a pallet, and Mr. Cruz then put the pallet onto the truck. Gibson Dep. at 83. For the purpose of its motion for summary judgment, Owyhee agrees that Mr. Cruz loaded the tarp onto the top of the load. Def.'s Reply at 1 n.1.

[3] The record is unclear whether Mr. Gibson used one tarp or two. *See* Gibson Dep. at 83, 86; Cruz Dep. at 7.

Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the plaintiff's positions [is] insufficient." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986). Where "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks omitted).

## DISCUSSION

Plaintiffs assert three claims for relief:  (1) violation of Oregon's Employer Liability Law ("ELL"); (2) common law negligence; and (3) loss of consortium. Owyhee moves for summary judgment against all three claims. For the reasons stated below, the court finds that Plaintiffs have failed to raise a genuine dispute of material fact with respect to the ELL claim, but concludes that Plaintiffs have raised a genuine dispute with respect to the negligence claim. The parties agree that the loss of consortium claim is dependent on the other claims. Def.'s Memorandum ("Def.'s Mem.") at 12 (Dkt. 20); Pls.' Response ("Pls.' Resp.") at 19-20 (Dkt. 23). Thus, Plaintiffs' loss of consortium claim also survives Defendant's motion.

### A.    Employer Liability Law

Oregon's ELL, Or. Rev. Stat. §§ 654.305 – 654.336, imposes "a higher standard of care on employers engaged in lines of work involving risk or danger" than is provided at common

law. *Trout v. Liberty Nw. Ins. Corp.*, 154 Or. App. 89, 96 (1998). Or. Rev. Stat. § 654.305, the section at issue in this case, provides:

> Generally, all owners, contractors or subcontractors and other persons having charge of, or responsibility for, any work involving a risk or danger to the employees or the public shall use every device, care and precaution that is practicable to use for the protection and safety of life and limb, limited only by the necessity for preserving the efficiency of the structure, machine or other apparatus or device, and without regard to the additional cost of suitable material or safety appliance and devices.

Oregon courts have interpreted the phrase "and other persons having charge of, or responsibility for" to mean that the ELL "applies not only to direct employers but also to 'indirect employers.'" *Brown v. Boise-Cascade Corp.*, 150 Or. App. 391, 396 (1997). In their first claim for relief, Plaintiffs allege that Owyhee is subject to the ELL because Owyhee was Mr. Gibson's indirect employer. Plaintiffs further allege that Owyhee violated the ELL by failing "to provide a safe place for workers to work on their premises when loading onions . . . and failed to use every device, care, and precaution which was practicable to use for the protection and safety of life and limb in the performance of the work[.]" Compl. at ¶ 4.

   To establish that a defendant who does not directly employee a plaintiff is an "indirect employer" subject to the ELL, the plaintiff must show that the defendant satisfies one of "three disjunctive tests: (1) the common enterprise test; (2) the retained control test; or (3) the actual control test." *George v. Myers*, 169 Or. App. 472, 477 (2000) (internal quotation marks and citation omitted). All three tests require the court to assess the degree to which the defendant was involved with or participated in "work involving a risk or danger to the employees or the public." Before considering the elements of each test, the court must determine the scope of the work involving risk or danger. *See Woodbury v. CH2M Hill, Inc.*, 335 Or. 154, 160-61 (2003) (finding that properly identifying the scope of work was the dispositive factor resolving the actual control

test); *Boothby*, 341 Or. at 40 (identifying work involving risk or danger before addressing right to control test). In this case, Plaintiffs contend that the "scope of work involving a risk or danger involves all aspects of the work related to the loading of the truck and preparing the load for shipment, to include, *but not limited to*, the actual tarping of the load." Pls.' Resp. at 12-13 (emphasis added). Owyhee argues for a narrower scope of work. It contends that "the risk-producing activity was whatever Mr. Gibson did while he worked upon the onions at height." Def.'s Reply at 2.

To determine the scope of work involving a risk or danger, the court "must . . . determine the conditions of the work that created the possibility that a worker would suffer harm." *Moe v. Eugene Zurbrugg Const. Co.*, 202 Or. App. 577, 585 (2005); *Woodbury*, 335 Or. at 161 ("as used in [Or. Rev. Stat. §] 654.305, 'risk' or 'danger' refers to conditions of the work that create the possibility that a worker will suffer harm"). Understood in this way, Plaintiffs' contention that the scope of work "involves all aspects of the work related to the loading of the truck" is too broad. There was no reasonable possibility that Mr. Gibson would suffer harm while Mr. Cruz loaded pallets onto the truck. Rather, Mr. Gibson only faced the possibility of serious harm by climbing onto the load of onions and applying the tarp while standing on the load. The scope of work involving risk or danger, therefore, was Mr. Gibson's climbing onto the top of the truckload of onions and applying the tarp while standing on that load.

Plaintiffs contend that Owyhee is an indirect employer under the ELL under all three tests. Pls.' Resp. at 13 ("there is evidence in the record sufficient to support a jury determination on all three separate basis [*sic*] for imposition of indirect employer liability"). In making their argument under each of the three tests, Plaintiffs rely on the same five facts:  (1) Owyhee required that Mr. Gibson cover the load with a tarp; (2) Owyhee required that Mr. Gibson apply

the tarp from "top to bottom" and uncover the front and back when he reached good weather; (3) Owyhee informed Mr. Gibson that one of its employees must inspect and approve the load and the tarp before permitting Mr. Gibson to depart; (4) Owyhee placed the tarp on top of the load; and (5) Owyhee controlled the property where Mr. Gibson parked the truck while he applied the tarp. To survive Owyhee's motion for summary judgment, Plaintiffs must show, using one or more of these facts, that there is a genuine dispute of material fact on at least one of the three disjunctive tests for "indirect employment" under the ELL.

### 1. The common enterprise test

Under the ELL, a common enterprise requires "more than a common interest in an economic benefit which might accrue from the accomplishment of the enterprise." *Sacher v. Bohemia, Inc.*, 302 Or. 477, 486 (1987). Rather, the plaintiff must show: "(1) the plaintiff's direct employer and the defendant participate in a project of which the defendant's operations were integral or component parts; (2) the work involved a risk or danger to the employees or public; (3) the plaintiff was an adopted or intermingled employee of the defendant; and (4) the defendant had charge of, or responsibility for, the activity or instrumentality that caused the plaintiff's injury." *Cortez v. Nacco Materials Handling Group, Inc.*, 248 Or. App. 435, 446 (2012).

In the present case, Plaintiffs fail to establish the third element of the four-part common enterprise test. There is no evidence that Mr. Gibson and Owyhee's employees were intermingled while Mr. Gibson engaged in the work that involved risk or danger. Owyhee's employees did not help Mr. Gibson apply the tarp. Gibson Dep. at 85-88. In fact, Mr. Cruz and Ms. Payan both testified that they were not authorized to help Mr. Gibson apply the tarp. Cruz Dep. at 6; Payan Dep. at 14; Froerer Decl. at ¶5. Although Mr. Cruz used his forklift to place the

tarp on top of the load, Mr. Cruz did not thereafter assist Mr. Gibson in applying the tarp. Cruz

Dep. at 6. Further, there is no evidence that Mr. Cruz helped Mr. Gibson in climbing onto the

load. After Mr. Gibson began to apply the tarp over the load, Owyhee's employees did not

observe his work. Gibson Dep. at 83. Mr. Gibson's injury occurred after Owyhee's employees

had finished their tasks and while Mr. Gibson was working alone. Plaintiffs, therefore, have not

raised a triable issue of fact showing that Owyhee's employees and Mr. Gibson were

intermingled while Mr. Gibson was performing the work that involved risk or danger. *See*

*Quackenbush v. Portland Gen. Elec. Co.*, 134 Or. App. 111, 115-16 (1995) ("Decedent was not

injured while defendants were involved in their activity. His death occurred after defendants'

activity had ended. Consequently, the facts on which plaintiffs rely do not support a common

enterprise theory.").

> **2.**      **The retained control test**

To establish that the defendant in an ELL case retained a right to control the work

involving a risk or danger, a "plaintiff must identify some source of legal authority for that

perceived right." *Boothby v. D.R. Johnson Lumber Co.*, 341 Or. 35, 41 (2006). In *Boothby*, the

plaintiff's spouse, Boothby, was killed at a logging site when a logging truck, called a "log

loader," rolled over him. *Id.* at 38. The plaintiff brought an action under the ELL against D.R.

Johnson Lumber Company ("Johnson"), the owner of the timber rights at the logging site, for

damages resulting from Boothby's death. *Id.* Although Boothby was an employee of

Intermountain Forest Management ("Intermountain"), a subcontractor, and not Johnson, the

plaintiff argued that Johnson was liable under the ELL because, pursuant to the contract between

Johnson and Intermountain, Johnson retained the right to control the work that involved risk or

danger. *Id.* at 40-42. According to the Oregon Supreme Court, the "question under the ELL

accordingly reduces to whether a reasonable juror could find that Johnson . . . retained the right to control the *manner or method* in which Intermountain operated the log loader." *Id.* at 41 (internal quotation marks omitted; emphasis added).

To answer that question, the Court focused on the contract between Johnson and Intermountain—the only source of legal authority between the companies. *Id.* at 41. The contract provided that Intermountain would harvest the timber at the logging site. *Id.* at 38. It also provided that Johnson "'is interested only in the results to be achieved and, except for the timing of logging operations, the conduct and control of the logging work will lie solely with Intermountain.'" *Id.* at 38 (quoting the contract; internal brackets omitted). The Court concluded that, in light of this provision, Johnson "retained no contractual right to control *how* Intermountain maintained or operated the log loader." *Id.* at 42 (emphasis added).

Here, the only source of legal authority identified by Plaintiffs is the Contract of Haul. Dkt. 23-2 at 13. In a section marked "Special Instructions," the Contract of Haul provides: "Cover completely w/ Tarps, uncover front & rear in nice weather above 34°." *Id*. Like the contract in *Boothby*, however, the Contract of Haul provides that the plaintiff must achieve a particular result—the load must be covered with a tarp that is partially opened in nice weather. It does not provide that Owyhee retains any right to control *how* that particular result is to be achieved. In other words, the Contract of Haul does not grant to Owyhee the right to control the manner or method that Mr. Gibson must use to apply the tarp; Owyhee is interested only in the results to be achieved. As in *Boothby*, the Contract of Haul provides no evidence to suggest that Owyhee retained the right to control the application of the tarp. *See George*, 169 Or. App. at 477 (finding that the plaintiff did not meet right to control test because there was "no evidence that defendant retained control over the *method and manner* of [the plaintiff's] *performance* and,

particularly, the risk-producing activity" (internal quotation marks omitted; emphasis added)).
Plaintiffs, therefore, have failed to raise a genuine dispute of material fact on the question of
whether Owyhee met the retained control test.

### 3.    The actual control test

To satisfy the actual control test under the ELL, the defendant must "actually control[]
the manner or method in which the risk producing activity is performed." *Woodbury*, 335 Or.
at 160. In *Woodbury*, the defendant was a general contractor. The plaintiff's direct employer,
Stratus, was a subcontractor. The defendant hired Stratus to install, among other tasks, a pipeline
approximately ten feet over a sunken stairway and corridor. Employees of the defendant and
Stratus together "discussed . . . how to suspend the pipe over the stairway and corridor. They
decided to construct a platform made of four-by-four and two-by-four boards and plywood." *Id.*
at 158 (quoting *Woodbury v. CH2M Hill, Inc.*, 173 Or. App. 171, 175 (2001), *rev'd*, 335 Or. 154
(2003)). After the defendant's work was complete, the defendant required Stratus to dismantle
the platform. *Id.* The plaintiff was injured when he fell while dismantling the platform. *Id.*

The Oregon Supreme Court began its analysis by defining the scope of work. The Court
found that the work that involved risk or danger was the installation of the pipeline over a sunken
stairway and corridor and "included requiring [the] plaintiff to work at height during the
assembly, use, and disassembly of the platform." *Id.*at 162. The Court then reviewed the
evidence concerning the method and manner in which the parties performed that work. The
Court noted that the defendant participated in the decision to use a wooden platform, instead of
ladders, to install the pipe over the sunken stairway and corridor. *Id.* The Court also noted that
the defendant and Stratus "jointly decided to use a fixed wooden platform consisting of boards
and plywood sheets." *Id.* The Court also observed that the defendant "advised [Stratus] that [it]

should build the platform sturdy enough and long enough to stay in the opening so it doesn't shift one way or the other." *Id.* (internal brackets and quotation marks omitted). Based on this evidence, the Court concluded that a jury could find that the "defendant exercised actual control over the manner or method in which the risk-producing activity (working at height) was performed and, therefore, defendant was liable under the ELL." *Id.* at 163.

The Supreme Court's decision in *Woodbury* illustrates a critical component of the actual control test. To satisfy that test, the defendant must do more than instruct the plaintiff, or the plaintiff's direct employer, to perform work involving a risk or danger. Instead, the defendant must instruct the plaintiff, or the plaintiff's direct employer, *how* to perform that work. Thus, in *Woodbury*, the court found that there was sufficient evidence for the jury to find indirect employer liability because the defendant not only instructed Stratus to achieve a particular result—*i.e.* install a pipe over the sunken stairway and corridor—but also instructed Stratus on *how* to accomplish that work—*i.e.*, build a wooden platform.

Several other Oregon cases illustrate this critical component. In *Wilson v. Portland Gen. Elec. Co.*, 252 Or. 385 (1968), for example, the Oregon Supreme Court found that the defendant had not exercised actual control over the work involving risk or danger because the defendant's "only exercise of control was for the purpose of securing the ultimate result for which [the] defendant had contracted." *Id.* at 398. There was "no evidence of an attempt by [the] defendant to control the *method and manner* of the work" involving a risk or danger. *Id.* (emphasis added).

The Oregon Court of Appeals has also emphasized this distinction between instructing the plaintiff to perform work involving a risk or danger and instructing the plaintiff *how* to perform that work. In *Brown v. Boise-Cascade Corp.*, 150 Or. App. 391 (1997), the plaintiff worked as a painter. The defendant, Boise-Cascade Corporation, hired the plaintiff's employer,

Partridge Industrial Coating, to paint the defendant's paper mill. *Id.* at 393. To paint one room of the mill, the plaintiff climbed onto the roof using a ladder. *Id.* The plaintiff was severely injured when he fell from the roof. *Id.* at 394. The plaintiff brought an action under the ELL to recover for his injuries. The Court of Appeals found that the plaintiff failed to satisfy the actual control test because there was "no evidence that [the] defendant ever told Partridge *how* to paint or which equipment to use." *Id.* at 398 (emphasis added). The Court emphasized that "Partridge alone" made the decision not to use potentially safer equipment, such as scaffolds or manlifts, to perform the painting. *Id.* In another case, *Cortez v. Nacco Materials Handling Group, Inc.*, the Court of Appeals reached a similar conclusion. It found that although the defendant maintained a broad policy governing the use of the forklift that injured the plaintiff, the defendant did not advise the plaintiff or the plaintiff's direct employer "on *how* to operate the forklift." 248 Or. App. at 447 (emphasis added).

In the present case, Plaintiffs rely on evidence showing that Owyhee required Mr. Gibson to tarp the load, told him to cover the load from top to bottom (and open the front and back in good weather), placed the tarp on top of the load, and insisted on inspecting the tarp before permitting Mr. Gibson to leave. Pls.' Resp. at 13-14. According to Plaintiffs, this evidence demonstrates that Owyhee "actually controlled the manner or method in which the risk producing activity was performed." Pls.' Resp. at 13. The court disagrees. The distinction, described above, between instructing the plaintiff to obtain a certain result and instructing the plaintiff *how* to perform the work necessary to obtain that result, shows, in this case, that Plaintiffs have failed to satisfy the actual control test. The evidence cited by Plaintiffs relates to the result that Owyhee sought to obtain—the transportation of a truckload of onions covered top

to bottom with a tarp (and partially open in good weather). The evidence does not show that Owyhee instructed Mr. Gibson on *how* to perform the work necessary to achieve that result.

Mr. Gibson's deposition testimony confirms this point. Mr. Gibson testified that Owyhee did not provide any instructions on how he should climb onto the load and apply the tarp:

Q.      Okay. And did anyone from Owyhee give you written or oral instruction about how you were to get up on top of the trailer?

A.      No, sir.

Q.      Did they give you written or oral instruction about how to get up on top of the load?

A.      No, sir.

Q.      Okay. Did they tell you how to place the tarp or how to unravel the tarp while up there?

A.      No, sir.

Q.      Okay. Did they give you written or oral instruction about how to spread the tarp once it was on top of the load?

A.      No, sir.

Q.      Did they tell you how best to do – to unravel or place the tarp so that it would cover the load?

A.      No, sir.

Q.      Okay. Did they give you instruction about how to tie down the tarp?

A.      No, sir.

Gibson Dep. at 84. Just as in *Wilson* and *Brown*, Owyhee directed Mr. Gibson to perform work that involved risk or danger, but did not instruct Mr. Gibson on how to perform that work. It was

Mr. Gibson *alone* who decided to climb on top of the load and apply the tarp while standing on the load of onions.

Plaintiffs argue that by not providing a tarping station, fall protection, or other manual assistance, Owyhee effectively gave Mr. Gibson no option as to the method or manner of tarping the onions other than by standing dangerously on top of the load by himself. Pls.' Resp. at 5. Plaintiffs, however, offer no evidence that Mr. Gibson was precluded from bringing a ladder, scaffolding, or even a helper to assist him in tarping the load. This further shows that although Owyhee directed the result to be obtained, it did not control the method or manner of obtaining that result.

Mr. Gibson also argues that the Oregon Supreme Court's decision in *Metcalf v. Roessel*, 255 Or. 186 (1970), directs different result. Pls.' Supplemental Br. at 5-6 (Dkt. 27). In that case, the Supreme Court held that the defendant's "control of the premises upon which plaintiff was injured amounts to sufficient control over the work plaintiff was performing to bring defendants within the purview of the [ELL]." *Id.* at 190. According to Plaintiffs, *Metcalf*'s holding shows that Owyhee's control over the premises on which Mr. Gibson applied the tarp is sufficient to satisfy the actual control test.

To the extent that *Metcalf* stands for the proposition asserted by Plaintiffs, that holding appears to have been implicitly overruled by later cases. In the more than 40 years since *Metcalf* was decided, no Oregon court has cited *Metcalf* for its holding that a defendant's control of the premises on which the injury occurred is sufficient to make that defendant subject to the ELL. Nor has any other Oregon appellate decision reached that conclusion. In fact, several later cases have implicitly rejected any such holding by finding no evidence supporting indirect employer liability even when the plaintiff was injured while performing an activity involving risk or

Page 14 – OPINION AND ORDER

danger on premises controlled by the defendant. *See, e.g., Sacher*, 302 Or. at 487-488 (no liability even though the plaintiff was injured while performing work on the premises of the defendant's sawmill); *Brown*, 150 Or. App. 393-99 (no liability even though the plaintiff was injured while working at a mill controlled by the defendant); *George*, 169 Or. App. at 474-78 (no liability even though the plaintiff was injured while working on a house owned by the defendant). Given these later holdings, the court finds that *Metcalf* is not controlling Oregon law.

Accordingly, Plaintiffs have failed to raise a triable issue of fact with respect to any of the three tests for indirect employer liability under the ELL. Plaintiffs' ELL claim is, therefore, dismissed.

**B.      Negligence**

In their second claim for relief, based on Oregon common law rather than statutory law, Plaintiffs allege that Owyhee "was negligent in failing to provide a safe place for workers to work on their premises when loading onions[.]" Compl. at ¶ 8. In particular, Plaintiffs allege that Owyhee was negligent in failing "to provide a scaffold or other apparatus so that [Mr.] Gibson . . . could safely tarp" his load and in failing "to provide assistance to [Mr.] Gibson" while he applied the tarp. *Id.* Owyhee argues that the court must dismiss this claim for two reasons: (1) the failure of Plaintiffs' ELL claim compels a finding that the negligence claim also fails and (2) Plaintiffs' negligence clam is independently barred by the "special expertise or knowledge" rule. Def.'s Mem. at 11-12.  As explained below, neither argument is convincing.

### 1.      The relationship between the ELL and common law negligence

Owyhee argues that because Plaintiffs' ELL claim fails, Plaintiffs' negligence claim necessarily fails as well. Owyhee reasons that Plaintiffs' failure to "establish that Owyhee had one of the three relationships to the injury-causing mechanism under the ELL" means that

Plaintiffs also cannot "establish the requisite duty of the defendant necessary for a negligence claim." Def.'s Mem. at 11. In support of this argument, Owyhee cites two Oregon cases that state that generally a defendant's liability under the ELL is co-extensive with its liability under common law negligence. *Id.* at 11; *see Boothby*, 341 Or. at 46 ("a person's liability in negligence for work involving a risk or danger is generally no more extensive than his or her liability for that work under the ELL"); *Howard v. Foster & Kleiser Co.*, 217 Or. 516, 533 (1958) ("If recovery cannot be had in this case under the Employers' Liability Law, it follows that none is available under the common-law rule of due care.").

The court disagrees with Defendant's interpretation of these cases. Owyhee's argument confuses two different requirements for ELL liability. The first requirement is applicable only when the defendant is not the plaintiff 's direct employer. The second requirement concerns the standard of care imposed under the ELL. The rule stated in *Howard*—that the absence of liability under the ELL precludes liability under common law negligence—applies only where the plaintiff has failed to meet the second requirement for ELL liability, namely that the Defendant's conduct has fallen below the applicable standard of care. As the Oregon Supreme Court explained in *Howard*, the ELL's standard of care "exacts of employers measures for the safety of employees which are more stringent than those of the common-law rule of due care." 217 Or. at 533. In other words, if the defendant meets the more stringent ELL standard of care, it necessarily also meets the less stringent standard of care under common law negligence. *Id.*

The same is not true, however, for the first requirement for ELL liability. If a court finds that the defendant does not satisfy any of the three tests for indirect employer liability, it does not necessarily follow that the defendant cannot be liable in common law negligence. There are many situations in which the ELL is not applicable because the plaintiff is neither a direct nor

indirect employee of the defendant but where, nonetheless, a defendant may be liable to a plaintiff in common law negligence. In an automobile accident case, for example, the victim is usually neither a direct nor indirect employee of the negligent driver. Nonetheless, negligence liability may attach.

The Oregon Court of Appeals has expressly recognized this distinction between the ELL and common law negligence. In *Cortez*, a case decided earlier this year, the Oregon Court of Appeals held that the plaintiff failed to establish that the defendant was subject to indirect employer liability under any of the three indirect employer liability tests. 248 Or. App. at 446-48. Nonetheless, the Court also held that neither *Howard* nor *Boothby* barred the plaintiff's negligence claim. *Id.* at 448-49. The Court explained that because it found that the defendant was not the plaintiff's indirect employer, the Court had not reached the question of whether the "defendant met the higher standard of care required by the ELL. Therefore, [the] plaintiff's negligence claim is not barred by failure of the ELL claim." *Id.* at 449. The Court of Appeals reached the same conclusion implicitly in other cases. *See, e.g., Quackenbush*, 134 Or. App. at 116-119 (finding one defendant not subject to indirect employer liability under ELL but potentially subject to negligence liability); *Torres v. U.S. Nat. Bank of Oregon*, 65 Or. App. 207, 210 (1983) (same).

Owyhee nevertheless contends that "*Cortez*'s treatment of the interplay between the ELL and the common law appears to be incorrect to the extent that it suggests that finding the ELL 'inapplicable' because there is no common enterprise, actual control[,] or retained control leaves open the full panoply of common law negligence remedies: such a notion cannot be reconciled with" *Boothby* and *Howard*. Def.'s Supplemental Br. at 7. According to Owyhee, in "both *Boothby* and *Howard*, [the] lack of a common enterprise or actual or retained control[] was

precisely the reason there was no common law remedy once the ELL remedy was precluded." *Id.* With respect to *Howard*, Owyhee's statement is incorrect. The defendant in *Howard* was the direct employer of the plaintiff, and, as such, the Oregon Supreme Court did not consider any of the tests for indirect employer liability. 217 Or. at 520, 536-44.

In *Boothby*, discussed above, the Oregon Supreme Court found that the contract between Johnson, the defendant, and Intermountain, the defendant's subcontractor and the decedent's direct employer, gave Intermountain control over how the log loader was operated. That fact, the Court found, negated ELL liability under the retained control test. According to the Court, it also negated negligence liability. The Court did not find, however, that there was no negligence liability *because* there was no indirect employer liability. Rather, the fact that Intermountain, not Johnson, controlled the log loader, negated negligence liability because, as a "general rule," an owner "ordinarily is not liable in negligence for its independent contractor's acts and omissions[.]"[4] *Id.* at 47. In other words, the same fact was crucial to the Court's analysis of both indirect employer liability and negligence liability, but the Court's conclusion with respect to the ELL did not compel the Court's conclusion with respect to negligence. As such, Plaintiffs' failure to establish that Owyhee is subject to indirect employer liability under the ELL does not require this court to find that Plaintiffs' negligence claim must also fail.

---

[4] The Court in *Boothby* cited to and relied on *Warner v. Synnes*, 114 Or. 451 (1924), *on reh'g*, 114 Or. 451 (1925), for this rule. In *Warner*, the Oregon Supreme Court held that "where the work is in charge of a contractor, and the party with whom he contracts is concerned only in the general result of the work, and has no control of the details and manner in which the work shall be accomplished, the contractor alone is responsible to the person in his employ who is injured during the progress of the work." *Id.* at 458. The Oregon Supreme Court, however, has recognized "numerous exceptions" to the rule expressed in *Warner*. *Boothby*, 341 Or. at 47. Among those exceptions is the rule that "in certain circumstances, a person who provides an unsafe work site may be liable to an employee of an independent contractor for injuries that the employee sustains on the work site." *Id,* citing *Yowell v. Gen. Tire & Rubber Co.*, 260 Or. 319, 322-26 (1970). Exceptions such as this one illustrate how a defendant might fail to satisfy any of the tests for indirect employer liability yet remain liable in negligence.

####    2.        Special expertise or knowledge

Owyhee next argues that Plaintiffs' negligence claim is barred by the "special expertise or knowledge" rule. Def.'s Mem. at 11-12. This rule was first articulated in *Yowell v. Gen. Tire & Rubber Co.*, 260 Or. 319 (1970). In *Yowell*, the plaintiff was a sign builder and repairer, employed by a company engaged in the business of installing and repairing signs. *Id.* at 320, 324-25. The defendant was in the tire business and owned a large tract of land, on which stood a large advertising sign mounted on a steel pole. *Id.* at 320. The defendant hired the plaintiff to make repairs to the sign. *Id.* The plaintiff was injured while repairing the sign. *Id.* at 321. He brought an action in negligence against the defendant to recover for his injuries. *Id.* at 322.

The Oregon Supreme Court held that the plaintiff could not sustain a negligence claim. The Court found that the "[p]laintiff's employer, the independent contractor, held itself out to the public as being engaged in the business of manufacturing, installing and repairing all kinds of signs. Defendant was therefore entitled to assume, until notice to the contrary, that plaintiff's employer and its employees who were sent to work on defendant's signs were proficient and expert in detecting any defects in signs which formed a danger to those working in or around them." *Id.* at 324-25. As such, the court held that a "person who orders repairs or work to be done by a third party owes no duty to such third party or his workman to discover and warn of any unknown dangerous conditions surrounding the work which fall within a *special expertise or knowledge, not shown to have been had by the person ordering the work,* and which the third party impliedly represents to the public that he possesses."[5] *Id.* at 325 (emphasis added).

---

[5]  In *Fazzolari v. Portland Sch. Dist. No. 1J*, 303 Or. 1, 17 (1987), the Oregon Supreme Court held that liability in negligence depends on, among other elements, whether the defendant's "conduct unreasonably created a foreseeable risk to a protected interest of the kind

Several years later, the Oregon Supreme Court reaffirmed its holding in *Yowell*. In *Esko v. Lovvold*, 272 Or. 27 (1975), a cable company employed the plaintiff to install and repair cable on top of utility poles. *Id.* at 28. The defendants, the owners of a trailer park, hired the cable company to repair cables on utility poles at the trailer park. *Id.* at 29. The cable company sent the plaintiff to perform the work. *Id.* While the plaintiff was climbing a utility pole, the pole broke and the plaintiff was injured. *Id.* The court held that the plaintiff's negligence claim was barred by the rule in *Yowell*. *Id.* at 30. As the court explained:

> Plaintiff, a lineman of considerable experience, was fully cognizant of the risks and dangers of his trade. Defendants were not shown to possess any special expertise or familiarity with poles beyond that possessed by an ordinary landowner, and had no actual knowledge of the defect in the pole. Under these circumstances, defendants were entitled to rely upon the expertise of plaintiff and his employer to deal with unknown dangerous conditions necessarily encountered in the performance of their special skills.

*Id.* at 30-31 (internal footnote omitted). The Oregon Court of Appeals applied *Yowell*'s rule more recently in *Brown v. Boise-Cascade Corp.*, discussed earlier. In that case, the plaintiff was a painter employed by a painting company, Partridge. The court found that the "advisability and efficacy of [safety] measures was a matter peculiarly within Partridge's 'special expertise or

---

of harm that befell the plaintiff." In most cases, *Fazzolari*'s "reasonable foreseeability" approach to analyzing negligence liability eliminates the traditional "duty of care" approach. *Oregon Steel Mills, Inc. v. Coopers & Lybrand, LLP*, 336 Or. 329, 340 (2004) ("Following *Fazzolari*, this court has discussed a defendant's liability for harm that the defendant's conduct causes another in terms of the concept of 'reasonable foreseeability,' rather than the more traditional 'duty of care.'"). Oregon courts do not, however, adhere to the "reasonable foreseeability" approach in all cases. In *Fazzolari* and subsequent decisions, Oregon courts have recognized that the concept of duty may still play a role where one of the parties invokes "a special status, relationship, or standard of conduct." *Oregon Steel Mills*, 336 Or. at 341. In those cases, the relationship between the parties "may create, define, or limit the defendant's duty to the plaintiff." *Id.* (internal quotation marks omitted). The rule set forth is *Yowell* remains good law after *Fazzolari*. Reformulated in "post-*Fazzolari* terms, *Yowell*'s rule is that the relationship between a . . . contractor and a specialized subcontractor embodies a special 'status' or 'relationship,' taking precedence over application of ordinary principles of general foreseeability." *George*, 169 Or. App. at 488 n.13.

knowledge.'" 150 Or. App. at 401. Partridge, the court added, "not defendant, was the expert in painting and painter safety." *Id*.

In each of these cases, three elements were present. First, the plaintiff possessed special expertise or knowledge concerning the performance of certain work. Second, the defendant hired the plaintiff to perform work drawing on that special expertise or knowledge. Third, the defendant did not possess that same special expertise or knowledge. These three elements were explicitly stated in the conclusion of a fourth case, *George v. Myers.* In that case, the Oregon Court of Appeals concluded that "the evidence was uncontroverted that defendant hired [the plaintiff's direct employer] because of its experience and specialized expertise in framing [houses]. There was no evidence that defendant had any knowledge or expertise regarding appropriate fall protection in framing multi-story houses. Consequently, *Yowell*'s fundamental principle precludes liability in this case." 169 Or. App. at 488.

In the present case, the first two elements are present. Mr. Gibson stated that he possessed knowledge about how to apply tarps. Gibson Dep. at 79. In addition, Owyhee hired Mr. Gibson to apply the tarp. *Id.* There is, however, evidence suggesting that third element is not present. Unlike the defendants in *Yowell*, *Esko*, *Brown*, and *George*, there is evidence in this case that Owyhee had knowledge about the dangers of covering loads on flatbed trucks with tarps. Owyhee's line of business is closely related to the work for which it hired Mr. Gibson. Owyhee employees load between five and 30 trucks at the Oregon plant each day. Froerer Dep. at 19. Owyhee's employees were aware that tarps are heavy. Payan Dep. at 15; Hittle Dep. at 26. Owyhee's employees were also aware that truck drivers, including Mr. Gibson, sometimes ask for help applying tarps. Payan Dep. at 14-15.

In addition, in his declaration, Paul Herbert, Plaintiffs' expert in truck and shipping safety, stated that it "is the industry standard to provide a tarping station to assist a trucker in tarping his load." Dkt. 24 at 3. This evidence, taken together, permits a reasonable inference that Owyhee knew that applying tarps could be dangerous and would be even more dangerous in the absence of a tarping station provided by a property owner consistent with the industry standard. If Owyhee, and not Mr. Gibson alone, also had knowledge of the dangers of applying tarps to loads at height and knew that other shipping plants commonly provided tarping stations in order to reduce the risk of injury, the third element common to cases invoking *Yowell*'s rule is not present here. Thus, based on this evidence, there is a genuine dispute of material fact concerning whether the "special expertise or knowledge" rule is applicable in this case. Summary judgment on Plaintiffs negligence claim is, therefore, not appropriate.

## CONCLUSION

For the reasons stated above, Owyhee's motion for summary judgment (Dkt. 19) is GRANTED IN PART AND DENIED IN PART; Plaintiffs' ELL claim is dismissed, and Plaintiffs' negligence and loss of consortium claims are not dismissed.

IT IS SO ORDERED.

DATED this 4th day of September, 2012.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge