IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **JAMES GIBSON** and **LAURIE GIBSON**, husband and wife, <br><br> Plaintiffs, <br><br> v. <br><br> **OWYHEE PRODUCE, LLC**, an Oregon limited liability corporation, <br><br> Defendant. | Case No. 3:11-cv-01132-SI <br><br> **OPINION AND ORDER** |

Gary J. Susak, SUSAK & POWELL, P.C., 1515 S.W. Fifth Avenue, Suite 1020, Portland, OR 97201; and Shenoa L. Payne, HAGLUND KELLEY LLP, 200 S.W. Market Street, Suite 1777, Portland, OR 97201. Of Attorneys for Plaintiffs.

Stephen C. Voorhees and Kurt C. Peterson, KILMER, VOORHEES & LAURICK, P.C., 732 N.W. 19th Avenue, Portland, OR 97209-1302. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

　　Plaintiff James Gibson ("Gibson") was a flatbed truck driver. In March 2010, Defendant Owyhee Produce, LLC ("Owyhee") hired Meteor Express, Inc. ("Meteor"), Gibson's employer,[1]

---

[1] The Amended Complaint states that Mr. Gibson was employed during the relevant time period by Fleet Force, Inc. Amended Complaint ¶ 2. Gibson testified at deposition, however, that Meteor dispatched him to Owyhee. Plaintiffs have not disputed Owyhee's representation that Meteor employed Gibson during the relevant time period.

PAGE 1 – OPINION AND ORDER

to haul a truckload of onions from Owyhee's packing and shipping facility in Oregon to a client in Florida. Meteor dispatched Gibson to haul the load. Owyhee requires that all loads be tarped before the driver can depart Owyhee's premises. Owyhee does not provide a tarping station or any other devices or assistance in tarping the load. Gibson stood on the load of onions to apply the required tarp, fell, and was injured. Gibson and his wife, Laurie Gibson, (collectively "Plaintiffs") bring this action to recover damages incurred as a result of Gibson's fall.

On September 4, 2012, the Court granted in part Owyhee's motion for summary judgment and dismissed Plaintiffs' claim under Oregon's Employer Liability Law ("ELL"). The Court denied Owyhee's motion with respect to Plaintiffs' negligence and loss of consortium claims.[2] At the request of the parties, the Court entered, pursuant to Federal Rule of Civil Procedure 54(b), final judgment only as to Plaintiffs' ELL claim. Plaintiffs appealed that judgment and on August 7, 2014, the United States Court of Appeals for the Ninth Circuit vacated this Court's grant of partial summary judgment on Plaintiffs' ELL claim and remanded to this Court for further consideration in light of the Oregon Court of Appeals' intervening decision in *Spain v. Jones*, 257 Or. App. 777 (2013). Upon further consideration and in light of *Spain*, the Court denies Owyhee's motion for partial summary judgment against Plaintiffs' ELL claim.

## STANDARDS

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view

---

[2] The Court's opinion with respect to Owyhee's motion against these two claims was not appealed and is not currently before the Court.

PAGE 2 – OPINION AND ORDER

the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and quotation marks omitted).

## BACKGROUND

The Court incorporates by reference the background section from its previous opinion and order on Owyhee's motion for summary judgment (Dkt. 29). The Court sets forth herein only the background information relevant to Plaintiffs' ELL claim.

Gibson lives in Alabama and hauled interstate loads for Meteor, which is based in Alabama. On March 9, 2010, Meteor dispatched Gibson to haul a load of onions from Owyhee's facility in Nyssa, Oregon to Miami, Florida. When Gibson was informed about this job, he was in a truck stop in Boise, Idaho. He was more than 2,000 miles from Alabama and approximately 50 miles from Nyssa, Oregon.

When Gibson was dispatched to the Owyhee job, he knew that he would have to tarp the load of onions and he brought his own tarp. The Contract of Haul provided that the driver should cover the load "completely w/tarps, [and] uncover front & rear in nice weather[.]" Contract of Haul (Dkt. 23-2) (capitalization omitted). Owhyee inspects the tarping of a load before allowing trucks to depart its premises to ensure that the tarping is done correctly. When first informed

PAGE 3 – OPINION AND ORDER

about this job, Gibson did not know whether Owyhee had a tarping station or any other tarping devices available for him to use.

After Gibson arrived at Owyhee's Nyssa facility, Owyhee's employee Socimo Cruz loaded approximately 950 bags of onions, stacked onto 19 pallets (with 50 bags to a pallet and each pallet separately wrapped in plastic) onto Gibson's flatbed truck. Each pallet was approximately six feet in height. Gibson did not help Mr. Cruz load the onions onto Gibson's flatbed truck.

Gibson placed the tarp on one of the pallets, and Mr. Cruz used a forklift to lift the pallet with the tarp onto Gibson's flatbed truck. Gibson asked whether Owyhee had a tarping station and after he was told there was no tarping station, Gibson asked Owyhee employees if someone could help him tarp the load. Owyhee does not permit its employees to assist in tarping loads. After the truck was loaded and the pallet with the tarp was placed on the truck, Gibson pulled away from the loading dock and parked alongside one of Owyhee's buildings to apply the tarp. Gibson stood on the load of onions to apply the tarp. As he was pulling the tarp over the load of onions, the onions on which he was standing shifted below him, and he fell off the back of the truck, fracturing his hip and elbow and straining his neck and back.

## DISCUSSION

Oregon's ELL, Or. Rev. Stat. §§ 654.305 – 654.336, imposes "a higher standard of care on employers engaged in lines of work involving risk or danger" than is provided at common law. *Trout v. Liberty Nw. Ins. Corp.*, 154 Or. App. 89, 96 (1998). The ELL "applies not only to direct employers but also to 'indirect employers.'" *Brown v. Boise-Cascade Corp.*, 150 Or. App. 391, 396 (1997). Plaintiffs allege that Owyhee was Gibson's indirect employer.

To establish that a defendant who does not directly employee a plaintiff is an "indirect employer" subject to the ELL, the plaintiff must show that the defendant satisfies one of "three

PAGE 4 – OPINION AND ORDER

disjunctive tests: (1) the common enterprise test; (2) the retained control test; or (3) the actual control test." *George v. Myers*, 169 Or. App. 472, 477 (2000) (internal quotation marks and citation omitted). All three tests require the court to assess the degree to which the defendant was involved with or participated in "work involving a risk or danger to the employees or the public."

The current issue before the Court on remand is whether, in light of *Spain*, there is a genuine issue of fact regarding whether Owyhee retained control of or actually controlled the risk-producing activity in which Gibson engaged while at Owyhee's facility.[3] In *Spain*, the plaintiff was a plumber who was performing plumbing duties on the second floor of a house that was under construction. The defendants in *Spain* included the property owner and the framing subcontractors. *Spain*, 257 Or. App. at 779-80. The framing subcontractors constructed a second-floor hallway that the plaintiff had to traverse in order to get to the second-floor bathroom and install the plumbing. The second-floor hallway was open and had no fall protection or barrier. *Id.* at 780. The plaintiff testified that he did not expect fall protection to be provided and had worked at other constructions sites without fall protection. The plaintiff's expert, however, testified that it was an industry standard for framing subcontractors, and not plumbing subcontractors, to install fall protection. *Id.* at 781. The property owner, who was experienced in construction and acting as the general contractor on the project, also expected that the framing subcontractors would install fall protection before other subcontractors began work at the site. *Id.* at 790.

In analyzing the plaintiff's common-law claims, the Oregon Court of Appeals in *Spain* found that there was a disputed issue of fact regarding whether it was the framing subcontractors or the plumbing subcontractor who was responsible for installing fall protection. *Id.* at 790. The

---

[3] The *Spain* decision does not affect the Court's previous analysis on whether Owyhee and Meteor were engaged in a common enterprise. Accordingly, the Court's previous Opinion and Order (Dkt. 29) remains in effect with respect to that aspect of the "indirect employer" analysis.

PAGE 5 – OPINION AND ORDER

court further found that if it was the framing subcontractors who were responsible for installing fall protection, the risk of falling from the unprotected hallway would be "inextricably intertwined" with the plaintiff's plumbing work. *Id.* at 792. The court noted that the plaintiff was required to walk along the hallway as part of his plumbing work on the house. In analyzing the plaintiff's ELL claim in *Spain*, the Oregon Court of Appeals found that the risk-producing activity included not only the plumbing work on the second floor, but also the plaintiff's unprotected walk along the second-floor hallway. *Id.* at 794. The court in *Spain*, relying upon its earlier finding of a disputed issue of fact regarding whether the framing subcontractors should have installed fall protection, concluded that there was a genuine issue of fact regarding whether the framers controlled the risk-producing activity of walking along the unprotected hallway. *Id.* at 794.

Although not expressly stated in *Spain*, in light of the facts relied on by the Oregon Court of Appeals in its opinion and its conclusion in that case, for purposes of an ELL claim this Court interprets *Spain* to stand for the proposition that if: (1) a defendant requires a particular activity; (2) it is the defendant's responsibility to provide a safe manner or method to perform that activity; (3) the defendant fails to provide that safe manner or method; and (4) the only practicable remaining manner or method is risky or dangerous, then the defendant "controlled" that risky or dangerous activity. With this standard in mind, the Court considers the facts in this case.

Here, the required activity was tarping the load of onions on a flatbed truck. Owyhee loaded Gibson's truck with the onions, wrapped in plastic, and placed Gibson's tarp on top of the load using Owyhee's forklift. Owyhee did not provide the tarp or a tarping station, suspension, platform devices, scaffolding, ladders, or any other form of assistance for drivers to use to tarp

PAGE 6 – OPINION AND ORDER

their loads. The parties dispute whether Owyhee was responsible for providing a tarping station or other devices. There is evidence in the record, similar to the evidence in *Spain*, that supports a finding that Owyhee was responsible for providing a tarping station. Plaintiffs' safety expert, V. Paul Herbert, testified that it is "industry standard" for produce facilities, like Owyhee, to provide a tarping station because otherwise there is no practicable way for a driver to tarp the load except to climb on top of it, which is risky and dangerous.

The parties also dispute whether, in the absence of a tarping station, there was another practicable way for the onions to be loaded and covered. Gibson testified that he was not dispatched to Owyhee until he was more than 2,000 miles from Alabama, where he and his employer are located, and was only 50 miles from Owyhee's facility. Owyhee contends that Meteor could have dispatched a tractor-trailer instead of a flatbed truck, or that Gibson otherwise could have tarped the load in a safe manner. This is an issue for a jury to decide. Viewing the evidence in the light most favorable to Gibson, there is evidence from which a jury could determine that it was not practicable for Gibson to return to his employer and obtain additional help or equipment, such as scaffolding, platforms, or ladders, to enable Gibson more safely to tarp his load at the Owyhee facility, and that the only practicable way to tarp the load without a tarping station was to climb on top of it, which is an activity that involves risk or danger.

The Court finds that there is a disputed issue of fact regarding whether Owyhee controlled the risk-producing activity of Gibson working at height to tarp the load. Viewing the facts in the light most favorable to Gibson, a reasonable jury could conclude that Owyhee controlled the manner in which Gibson's load was tarped because: (1) Owyhee required that the load be tarped; (2) there is evidence that it is Owyhee's responsibility to provide a tarping station, based on the testimony of "industry standards"; (3) Owyhee failed to provide a tarping

PAGE 7 – OPINION AND ORDER

station; and (4) there is evidence that the only practicable way to tarp the load without a tarping station required Gibson to climb on top of the load, which is risky or dangerous. Accordingly, Owyhee's motion for summary judgment against Plaintiffs' ELL claim is denied.

## CONCLUSION

Gibson's motion for summary judgment (Dkt. 19) is denied with respect to Plaintiffs' ELL claim. With respect to all other claims, the Court's previous Opinion and Order (Dkt. 29) remains in effect.

**IT IS SO ORDERED**.

DATED this 9th day of October, 2014.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge

PAGE 8 – OPINION AND ORDER